UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

AUSTIN PATTON                                                                   Plaintiff

v.                                                          Civil Action No. 3:18-CV-00346-RGJ

LOUISVILLE JEFFERSON COUNTY                                    Defendants
METRO GOVERNMENT *ET AL*.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Plaintiff Austin Patton sues Defendants Louisville Jefferson County Metro Government ("Louisville"); City of Louisville Department of Metro Corrections ("LDMC") (collectively, "Municipal Defendants"); Mark Bolton, in his official and individual capacities; Dwayne A. Clark, in his official and individual capacities (collectively "Individual Defendants"); all unknown correctional officers for City of Louisville Department of Metro Corrections ("Unknown Officers"); and all unknown ranked supervisors for City of Louisville Department of Metro Corrections ("Unknown Supervisors") (collectively, "Unknown Defendants"). [DE 1]. Patton alleges that Defendants violated his rights under the Constitution and Kentucky law while he was a pretrial detainee. [*Id.*]. The Municipal and Individual Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). [DE 4]. Briefing is complete, and this matter is ripe. For the reasons below, the Motion to Dismiss will be GRANTED in part and DENIED in part.

      **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**

The Court takes the following factual allegations in the complaint as true for its consideration of the present motion. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

1

Patton is, and has been, in LDMC's custody, awaiting trial. [DE 1 at 5–6, ¶ 17]. Patton has received death threats from inmates associated with Patton's alleged victim. [*Id.* at 6, ¶18]. A judge ordered that Patton be held in Christian County for his safety, however, LDMC has periodically transported Patton to Jefferson County for court appearances. [*Id.* at 6, ¶¶ 19–20]. While held in Jefferson County, LDMC placed Patton on the fifth floor in the general population with the individuals who had threatened him. [*Id.* at 6, ¶ 22]. He was supposed to be placed in protective custody and/or the fourth floor for seclusion from his alleged victim's friends. [*Id.* at 6, ¶ 21]. Patton's alleged victim's friends assaulted him in the shower room on the fifth floor, and Patton "suffered a fractured skull, a fractured eye socket, a broken arm, and various other bodily injuries." [*Id.* at 6, ¶ 23–24]. Despite the known health and safety risk to Patton, the Unknown Officers and Unknown Supervisors were not checking on Patton that day during their rounds. [*Id.* at 7, ¶ 26–27]. Patton lay "in the shower room seriously injured and nearly dead for five hours before Unknown COs found him, only after [Patton's] Mom visited [LDMC] and inquired into his whereabouts." [*Id.* at 6, ¶ 25].

Patton alleges Bolton is the "Director of the [LMDC] and a [Louisville] employee . . . and is responsible, in part for forming, administering, monitoring, and supervising the policies and activities involved in those of the . . . known and unknown [LMDC] employees." [*Id.* at 4–5, ¶¶ 10–12]. Patton alleges Clark is the "Chief of Staff of [LMDC] and a [Louisville] employee . . . and is responsible, in part for administering, monitoring, and supervising the policies and activities involved in those of the . . . known and unknown [LMDC] employees." [*Id.* at 5, ¶¶ 12–13]. Patton alleges the Municipal Defendants are "responsible, in part, for administering, monitoring, and supervising the policies and activities . . . of the . . . known and unknown [MCDC] employees." [*Id.* at 4, ¶¶ 8–9]. Patton further alleges that Defendants knew, or should have known,

that there was a substantial risk of harm when he transferred back to Jefferson County for trial purposes, that they were on notice of the Christian County's Judge's order, and that they disregarded that risk by placing him in the general population. [*Id*. at 8, ¶ 36].

Patton sued Defendants, alleging violations of his Fourteenth Amendment right to due process (Federal Count I), Conspiracy to violate the Constitution (Federal Count II), Failure to train, supervise, audit, and discipline (Federal Count III), and violations of his rights under Kentucky law, violation of due process under the Kentucky Constitution (State Count I), Conspiracy to Violate the Kentucky Constitution (State Count II), Negligence (State Count III), Reckless/Negligent failure to train and supervise (State Count IV). [*Id.*]. In his prayer for relief, Patton requests compensatory damages, punitive damages, and injunctive relief. [*Id*. at 12]. The Individual and Municipal Defendants moved to dismiss the counts against them, [DE 4], and Patton responded, [DE 5]. No replies were filed.

## II.     STANDARD

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint

suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### III. DISCUSSION

#### A. Federal Claims

"[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation omitted). To state a claim under Section 1983, "a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). Defendants do not dispute that they were acting under color of state law, and so the only issue disputed is whether Patton has adequately alleged that Defendants violated his constitutional rights.

To assert a cognizable § 1983 claim, a plaintiff must allege specific facts. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986). "The required facts must provide adequate detail to support the claim, such as specific incidents of deprivation of a plaintiff's rights, how each

4

defendant was involved, the names of other persons involved, dates, and places." *Allen v. Aramark Corp.*, Civil Action No. 3:07CV–P260–M, 2009 WL 1126093, at *3 (W.D. Ky. Apr. 27, 2009). The specific facts must explain how each defendant is responsible for the alleged injuries. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Allegations premised on mere conclusions and opinions fail to state an adequate claim, *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987), and bare and conclusory allegations that a defendant personally deprived the plaintiff of constitutional or statutory rights are insufficient to state a cognizable claim, *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983). Although Rule 8 of the Federal Rules of Civil Procedure does not constitute a "hyper-technical, code-pleading regime," it "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

  1. *Individual Defendants*

Patton sues Mark Bolton, Director for LDMC, and Dwayne A. Clark, Chief of Staff for LDMC, alleging that the Individual Defendants violated Patton's Fourteenth Amendment rights directly, conspired to violate his Fourteenth Amendment rights, and violated his Fourteenth Amendment rights by failing to train and supervise the Unknown Defendants. He brings these claims against the Individual Defendants both in their individual and official capacities.

    i. <u>Count I - Individual Capacity - Violation of the Fourteenth Amendment</u>

In Count I, Patton asserts that the Individual Defendants "knew, or should have known" that there was "a substantial risk of serious harm to [Patton] when transferred back to The Department" and that the Individual Defendants "disregarded the risk . . . by placing him in the general population of the Department and not monitoring his whereabouts therein." [DE 1 at 8, ¶¶ 37–38].

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment requires that officials "take reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "Prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Patton, "as a pretrial detainee rather than a convicted prisoner, was not within the protection of the eight amendment; however, the eighth amendment rights of prisoners are analogized to those of detainees under the fourteenth amendment, to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985).

Patton has plead facts specific to the Individual Defendants sufficient for the Court to infer that the Individual Defendants knew or should have known Patton was at risk if placed among the general population. Thus, at this stage of the proceedings, Patton has adequately plead a violation of his Fourteenth Amendment rights against the Individual Defendants. As a result, the motion to dismiss is denied as to this claim.

   ii.  Individual Capacity - Conspiracy to Violate the Fourteenth Amendment

In Count II, Patton asserts that the Individual Defendants conspired to violate his Fourteenth Amendment rights. [DE 1 at 9].

"It is well-settled that conspiracy claims must be pled with some degree of specificity." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)(ruling on a motion for summary judgment, rather than motion to dismiss). That said, at this early stage of the proceedings, where a Court is

considering a motion to dismiss as opposed to one for summary judgment, the Sixth Circuit has also made it clear that claims made under 42 U.S.C. § 1983 are not subject to any heightened pleading standard. *Memphis, Tennessee Area Local, American Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004); *Jones v. Duncan*, 840 F.2d 359, 361 (6th Cir. 1988) (stating that § 1983 plaintiff need not set down in detail all the particularities of her claim against a defendant).

A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). Express agreement among all the conspirators is unnecessary to find the existence of a civil conspiracy. *Id*. Each conspirator need not have known all the details of the illegal plan or all the participants involved. *Id*. To establish a civil conspiracy claim, a plaintiff must show that (1) a "single plan" existed; (2) defendants "shared in the general conspiratorial objective" to deprive plaintiff of his constitutional or federal statutory rights; and (3) an "overt act was committed in furtherance of the conspiracy that caused injury" to the plaintiffs. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985); *see also Trans Rail Am., Inc. v. Hubbard Twp.*, 478 F. App'x. 986, 988 (6th Cir. 2011). A Plaintiff does not have to allege or produce direct evidence of the conspiracy; "circumstantial evidence may provide adequate proof." *Weberg v. Franks*, 229 F.3d 514, 528 (6th Cir. 2000); *Bazzi v. City of Dearborn*, 658 F.3d 598, 606 (6th Cir. 2011).

Patton has sufficiently stated a § 1983 conspiracy claim against the Defendants. He alleges the Individual Defendants knew he was at risk if placed among the general population and that he was supposed to be in protective custody on the fourth floor. [DE 1 at 8, ¶ 36]. Despite this known health and safety risk, the Unknown Officers and Unknown Supervisors did not check on Patton during their rounds. [*Id.* at 7, ¶ 26–27]. Patton lay "in the shower room seriously injured and

nearly dead for five hours before Unknown COs found him, only after [Patton's] Mom visited [LDMC] and inquired into his whereabouts." [*Id.* at 6, ¶ 25]. He alleges that the Defendants' "knowledge and conduct is strong circumstantial evidence that . . . raises the inference" that Defendants "unlawfully conspired and agreed, expressly or implicitly, to deny Plaintiff Patton his U.S. Constitutional Rights . . ." [*Id.* at 9, ¶ 41]. At this stage of the proceedings, where the Court must accept all of Plaintiffs' factual allegations as true, those collective allegations are enough for the Court to infer that the Individual Defendants could be liable for conspiring to violate Patton's Fourteenth Amendment rights. For these reasons, the motion to dismiss is denied as to this claim.

### iii. Individual Capacity - Failure to Train and Supervise

In Count III, Patton asserts that the Individual Defendants failed to "train, supervise, audit, and discipline" the Unknown Defendants. [DE 1 at 9]. In *Harvey v. Campbell Cty.*, 453 F. App'x 557 (6th Cir. 2011), the Sixth Circuit held that government officials may be held individually liable under § 1983 only if they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* at 563. Thus, the court required that the "plaintiffs . . . show that [the individual defendants] 'at least implicitly authorized, approved, or knowingly acquiesced in'" the alleged constitutional violation. *Id.* (quoting *Phillips v. Roane Cty.*, 534 F.3d 531, 543 (6th Cir. 2008)). A "mere failure to act" is insufficient to establish supervisory liability. *Doe v. City of Roseville*, 296 F.3d 431, 440 (6th Cir. 2002).

Patton alleges that Bolton and Clark were "deliberately indifferent to, recklessly, and/or negligently failed to recognize the needs to properly train, supervise, audit, and discipline . . . in especially in the area of inmate safety to." [DE 1 at 9, ¶ 43]. A "mere failure to act" is not enough, but Patton also alleges that "all Defendants knew, or should have known of the substantial risk of serious harm to Plaintiff Patton . . . by placing him the general population . . . and not monitoring

8

his whereabouts . . . ." [*Id*. at 8, ¶ 37]. This is enough, in a motion to dismiss, for the Court to infer that the Individual Defendants could be liable for at least implicitly authorizing, approving, or knowingly acquiescing in an alleged constitutional violation. As a result, the motion to dismiss is denied as to this claim.

### iv.    Official Capacity Claims Against Individual Defendants

Patton also asserts Counts I, II, and III against the Individual Defendants in their official capacities. The United States Supreme Court has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 67 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). So a suit against a government agent in their official capacity equates to a suit against the government agency in question. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985) (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978)). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* (emphasis in original). Thus, Patton's claims for money damages from the Individual Defendants in their official capacities fail to allege cognizable claims under § 1983.

That said, in *Will v. Mich. Dep't of State Police*, the Supreme Court noted that officials still may be sued for injunctive relief under § 1983 because "'official capacity' actions for prospective relief are not treated as actions against the State." 491 U.S. 58, 71 n.10 (1989). The Individual Defendants have not moved to dismiss Patton's request for an injunctive relief or otherwise addressed this issue in the motion to dismiss. Thus, Patton's official capacity claims will be dismissed against the Individual Defendants, except for the claim for injunctive relief.

## 2. *Municipal Defendants*

Patton also brings § 1983 claims against two municipal defendants: Louisville and LMCD. [DE 1 at 9, ¶¶ 42–44]. Patton alleges that the Municipal Defendants "failed to recognize the need to properly train, supervise, audit, and discipline all Unknown COs under their command, especially in the area of inmate safety." [*Id.* at ¶ 43].

To begin, Defendants assert that LDMC is "not an entity which may be sued" and the claims against LDMC are best characterized as claims against Louisville, already a party to this action. *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (citing *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990). Patton does not oppose this assertion and Patton has failed to state a claim against LDMC for this reason. The motion to dismiss is granted as to LMCD.

As for Louisville, *Monell* precludes *respondeat superior* liability for municipalities, as the municipal government cannot be held liable solely because one of its employees commits a constitutional violation. *Monell*, 436 U.S at 691. A plaintiff raising a municipal liability claim under § 1983 must show that the alleged federal violation occurred because of a municipal policy or custom. *Id*. at 694. "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fisher*, 735 F.3d 462, 478 (6th Cir. 2012) (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "In the context of Section 1983 municipal liability, district

courts in the Sixth Circuit have interpreted *Iqbal's* standards strictly." *Hutchison v. Metro. Gov't*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (collecting cases).

Patton does not allege that the Municipal Defendants had an illegal policy or custom, that there was a policy of inadequate training or supervision, or that there was a custom of tolerance or acquiescence of federal rights violations. Instead, Patton alleges that all Defendants, which include Bolton and Clark, "knew, or should have known of the substantial risk of serious harm to Plaintiff Patton . . . by placing him the general population . . . and not monitoring his whereabouts. . . ." [*Id.* at 8, ¶ 37]. At this stage of the proceedings, he has alleged enough, taking the allegations of the complaint as true, for the Court to infer that an official with final decision making authority could have ratified illegal actions. As a result, the motion to dismiss is denied as to this claim against Louisville.

**B. State Claims**

Patton also sues each Defendant for violating the Kentucky Constitution, conspiracy to violate the Kentucky Constitution, negligence, and reckless and/or negligent failure to train and supervise the Unknown Defendants.

*1. Municipal Defendants – Sovereign Immunity*

"Immunity from suit is a sovereign right of the state." *Foley Constr. Co. v. Ward*, 375 S.W.2d 392, 393 (Ky. 1963). "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." Kentucky Constitution, Sec. 231. A county "is a political subdivision of the Commonwealth as well, and as such is an arm of the state government. It, too, is clothed with the same sovereign immunity." *Cullinan v. Jefferson Cty.*, 418 S.W.2d 407, 408 (Ky. 1967), *overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510, 527 (Ky. 2001). "A consolidated local government shall be accorded the same sovereign

11

immunity granted counties, their agencies, officers, and employees." Ky. Rev. Stat. 67C.101. "Therefore, absent an explicit statutory waiver, [Louisville Jefferson County] Metro Government is entitled to sovereign immunity." *Jewish Hosp. Healthcare Servs., Inc. v. Louisville/Jefferson Cty. Metro Gov't*, 270 S.W.3d 904, 907 (Ky. Ct. App. 2008).

Patton has presented no explicit statutory waiver of Louisville's immunity, and the Court is unaware of any such waiver. Louisville, and its agency LDMC, are therefore protected from Patton's state-law claims by sovereign immunity. As a result, the motion to dismiss is granted as to the state claims against Louisville and LDMC.

### 2. *Individual Defendants*

Patton brings his state-law claims against the Individual Defendants in both their official and individual capacities.

#### i. Official Capacity

When sued in their official capacity, officials are "cloaked with the same immunity as the government or agency he/she represents." *Schwindel v. Meade Cty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero*, 65 S.W.3d at 522). The Individual Defendants are therefore protected in their official capacities by absolute immunity from the state-law claims.

#### ii. Individual Capacity

Defendants argue that they are entitled to qualified immunity from Patton's state-law claims. [DE 4-2 at 35–37].

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (internal quotation and citations omitted). There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss

on qualified immunity grounds that differs from the plausibility standard established under *Iqbal*. *Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a defendant to claim qualified immunity on the pleadings *before discovery*," *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Village Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

"Qualified official immunity applies to the negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero v. Davis*, 65 S.W.3d 510, 521–22 (Ky. 2001). But "an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* at 522. Thus, qualified immunity depends "on the function performed" and whether the official acted in "good faith." *Id.* at 521.

When an official violates clearly established constitutional or statutory rights of which the official should have known, qualified immunity will not protect them from suit. *Mitchell*, 472 U.S. at 524. Acts involving supervision and training are consistently held to be discretionary functions. *Nichols v. Bourbon Cty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Doe v. Magoffin Cty. Fiscal Court*, 174 F. App'x 962, 973 (6th Cir. 2006); *Rowan Cty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006). Whether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith.

13

*Nichols*, 26 F. Supp. 3d at 642. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.,* objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

Taking Patton's factual allegations as true and drawing all inferences in his favor, *Wesley*, 779 F.3d at 427, Patton's claims survive, and qualified immunity does not apply at this stage of the case. All that Patton must do is "allege [ ] facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Id.* (quoting *Handy–Clay*, 695 F.3d at 538 (quoting *Twombly*, 550 U.S. at 555)). Patton alleges that despite his known health and safety risk, he was placed on the fifth floor with the general population and the Unknown Officers and Unknown Supervisors were not checking on Patton during their rounds. [*Id.* at 7, ¶ 26–27]. Whether these Defendants performed their acts in good faith or bad faith is a question of fact. For these reasons, qualified immunity cannot be determined at this stage of the proceedings, and the motion for the dismissal on this basis is denied.

**C.      Unknown Defendants**

Patton also sues many unnamed defendants, all employees of LDMC. The Sixth Circuit has determined that the service requirement of Rule 4(m) of the Federal Rules of Civil Procedure applies to the naming of unidentified defendants. *Petty v. Cty. of Franklin*, 478 F.3d 341, 345 (6th Cir. 2007) ("[Plaintiff] has yet to identify John Does # 1 and # 2, and thus has yet to serve them, clearly in violation of the 120–day window provided by Rule 4(m)."). Rule 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

When a plaintiff has not timely identified an unnamed party, and the defendant does not move for dismissal based on improper service, a court should order the plaintiff to show good cause why claims against the unnamed party should not be dismissed. *Reynosa v. Schultz*, 282 F. App'x 386, 391–93 (6th Cir. 2008) (remanding dismissal of plaintiff's claims because, although John and Jane Doe health care providers remained unidentified for more than 120 days, the Court did not order plaintiff to show good cause for delay before dismissing claims).

Patton commenced this action on June 1, 2018. [DE 1]. He needed to name and serve the Unknown Defendants no later than October 1, 2018. Fed. R. Civ. P. 4(m). The Unknown Defendants remain unidentified. That said, initial disclosures are not due until 14 days after the parties' Rule 26(f) conference, Fed. R. Civ. P. 26(a)(1)(C), and a party may not seek discovery until the parties have conferred in a Rule 26(f) conference, Fed. R. Civ. P. 26(f). Here, no Rule 26(f) conference has been ordered and no Fed. R. Civ. P. 16 scheduling conference has been held. Thus, good cause is shown for why Patton has not yet identified and served the unknown parties.

## IV. CONCLUSION

For the reasons set forth above, **THE COURT HEREBY ORDERS** that Defendants' Motion to Dismiss [DE 4] is **GRANTED IN PART and DENIED IN PART** as set forth above. The Court will issue a separate Order for Meeting and Report pursuant Fed. R. Civ. P. 16 and 26.

October 15, 2019

Rebecca Grady Jennings, District Judge
United States District Court

15